UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                          :
DR. AMOL D. MALI,                         :
                                          :
                         Plaintiff,       :        17 Civ. 685 (KPF)
                                          :
              v.                          :        OPINION AND ORDER
                                          :
BRITISH AIRWAYS,                          :
                                          :
                         Defendant.       :
                                          :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 6, 2018

KATHERINE POLK FAILLA, District Judge:

This suit arises from the unfortunate stranding of Plaintiff, Dr. Amol
D. Mali, outside the Mumbai airport for one night in January of 2015, and his
subsequent frustration with the response he received from Defendant British
Airways. In brief, Plaintiff purchased a round-trip ticket from Chicago to
Mumbai, with layovers in London in each direction. On his way to India,
Plaintiff flew from Chicago to London and from London to Mumbai without
incident, but he was not permitted to board his return flight from Mumbai to
London. Though Plaintiff is, and was at the time, a lawful permanent resident
of the United States, he was told by Defendant's representatives in Mumbai
that he did not possess the proper American immigration records to pass
through the United Kingdom. After an anxious night spent outside the airport
waiting to contact his wife, Plaintiff was able to purchase a ticket on another
airline that would take him directly from Mumbai to the United States. Upon
his return home, Plaintiff researched whether he had properly been denied

boarding in Mumbai.  After arriving at the conclusion that he had not, Plaintiff submitted at least two complaints to Defendant.  Though he was refunded a portion of his ticket price and given a voucher for future travel, Plaintiff remained dissatisfied with the result and initiated this lawsuit on January 25, 2017, exactly two years after he was stopped in Mumbai.

Defendant now moves under Federal Rule of Civil Procedure 12(b)(2) to dismiss the case for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim.  For the reasons set forth in this Opinion, Defendant's motion is granted in part under Rule 12(b)(2) and in part under Rule 12(b)(6), such that Plaintiff's claims are dismissed in their entirety.

BACKGROUND[1]

## A.      Factual Background

### 1.      The Parties

Plaintiff, who is proceeding *pro se*, is an Associate Adjunct Professor of Clinical and Translational Science who resides in Wisconsin.  (Am. Compl., Ex. 16).  Plaintiff arrived in the United States in 1995, and has maintained lawful permanent resident status since 2004.  (Am. Compl. 15; *id.* at Ex. 4).

---

[1]      The well-pleaded allegations in the Amended Complaint are taken as true for purposes of this motion, and the Court will refer to Plaintiff's pleading as "Am. Compl." (Dkt. #27) and to the exhibits attached thereto as "Am. Compl., Ex. [X]."  Because Plaintiff does not use numbered paragraphs in the Amended Complaint, all citations are to page numbers.  For ease of reference, the Court refers to Defendant's Memorandum of Law in Support of British Airways' Motion to Dismiss as "Def. Br." (Dkt. #32); to the Declaration of Carol O'Rourke in Support of Defendant British Airways' Motion to Dismiss as "O'Rourke Decl." (Dkt. #33); to Plaintiff's Memorandum of Law in Opposition of British Airways' Motion to Dismiss the First Amended Complaint as "Pl. Opp." (Dkt. #37); and the exhibits attached thereto as "Pl. Opp., Ex. [X]"; and to Defendant's Reply Memorandum of Law in Further Support of British Airways' Motion to Dismiss as "Def. Reply" (Dkt. #42).

Defendant is a foreign air carrier "duly organized and existing under the laws of England and Wales." (O'Rourke Decl. ¶ 4). The company is headquartered in Harmondsworth, England. (*Id.*).

### 2. Plaintiff's Immigration Documentation

At the time of the events at issue in this action, Plaintiff was in possession of a legal permanent resident card (commonly known as a "Green Card") and a Form I-797C, in addition to his Indian passport. (Am. Compl. 9). The Form I-797C is not itself a confirmation of any particular immigration status; it reflects that Plaintiff had applied to replace his Green Card and, toward that end, had received an appointment at the United States Citizenship and Immigration Services ("USCIS") office in Milwaukee, Wisconsin, on October 6, 2014. (*Id.* at Ex. 7). Plaintiff's I-797C displays an endorsement stamp that reflects that he appeared at the appointment as required. (*Id.*).

Plaintiff first received permanent resident status on May 10, 2014. (Am. Compl., Ex. 4). Plaintiff's Green Card was due to expire on January 8, 2015, so when Plaintiff appeared for his appointment at USCIS in October 2014, USCIS affixed a sticker to the back of it, which sticker served to extend the card's validity through the end of July 2015. (*Id.*; *see also* Am. Compl. 12).

Plaintiff has appended to his Amended Complaint and opposition brief numerous communications with immigration attorneys and foreign consular employees regarding the reliance on certain paperwork for international travel. (*See* Am. Compl., Ex. 18; Pl. Opp., Ex. A). As the Court offers no view on the

sufficiency of Plaintiff's immigration documents, the significance of the opinions offered by those individuals is not evaluated herein.

### 3. Plaintiff's Travel to Mumbai

On December 13, 2014, Plaintiff booked a round trip flight with Defendant from Chicago, Illinois, to Mumbai, India. (Pl. Opp., Ex. B at 2). As scheduled, Plaintiff traveled from Chicago to Mumbai on January 14, 2015, stopping for a layover at London's Heathrow Airport. (Am. Compl. 8). He was due to return to Chicago, via the same route and airline, on January 25, 2015. (*Id.* at 8-9).

The U.K. imposes certain documentation requirements on air passengers who have stopovers in U.K. airports. (Am. Compl., Ex. 12). These requirements include both a valid passport and a transit visa. (*Id.* at 1 ("You'll need a visa to pass through the UK in transit (unless you're exempt).")). However, there are certain exemptions to the transit visa requirement.[2] Passengers who are not subject to an articulated exemption are required to obtain a transit visa to pass through a U.K. airport, even if their stop is simply a layover.

Upon arriving at the Mumbai airport on January 25, 2015, Plaintiff was informed by Defendant's agents that he would not be allowed to board his

---

[2] Of the several exemptions to the U.K. transit visa requirement, two are relevant to Plaintiff's claims. The government website titled "Check if you need a UK visa" states that "You don't need a visa if you have one of the following: ... a valid USA permanent residence card issued by the USA on or after 21 April 1998 [or] an expired USA I-551 Permanent Residence card issued by the USA on or after 21 April 1998, with a valid I-797 letter authorising extension." (Am. Compl., Ex. 12).

scheduled flight to London because he did not have a U.K. transit visa. (Am. Compl. 9-10). Having presented his Green Card and I-797C letter at the Chicago airport prior to the first leg of his journey — and having been permitted to board that flight to the U.K. — Plaintiff was understandably frustrated and confused. (*See id.* at 9 ("My travel documents … were considered valid and sufficient for the entire journey from Chicago to Mumbai, including UK transit."); Pl. Opp. 2 ("I didn't need [a] visa for [ ] UK transit on the way to Mumbai from Chicago.")). Nonetheless, Defendant's agents in Mumbai told Plaintiff that his immigration papers were insufficient to qualify him for an exemption to the U.K. transit visa requirement, and that he could not travel through London without one. (Am. Compl. 10). Plaintiff was advised that because his Green Card had expired, he "needed an I-797 letter stating that the validity of [his] U.S. permanent resident card had been extended by one year." (*Id.*).

Because Defendant would not permit Plaintiff to board the plane, and because he had no other valid ticket, Plaintiff had to leave the airport. (Am. Compl. 16-18). He spent the night waiting outside before he was able, with the assistance of his wife in Wisconsin, to arrange alternate transportation to the United States the next morning. (*Id.* at 18-20). This second ticket was booked with United Airlines on a flight that took him directly to Newark, New Jersey, without requiring a stop in the U.K. (*Id.* at Ex. 2). Once he was able to purchase and produce another ticket, Plaintiff was allowed to reenter the Mumbai airport — approximately nineteen hours after he was initially forced to

leave.  (*Id.* at 19-22).  From Newark, Plaintiff traveled on to Chicago.  (*Id.* at Ex. 2).  This ticket came at a significant expense to Plaintiff of more than $800. (*Id.*).

### 4.    Plaintiff's Complaints and Defendant's Responses

Upon his successful return to the United States, Plaintiff lodged complaints with the Better Business Bureau ("BBB") and the Department of Transportation ("DOT").  (Am. Compl., Ex. 8-9; Pl. Opp., Ex. G).  Though neither party provided the Court with copies of Plaintiff's submissions, the responses he received from Defendant are in the record and reflect that Plaintiff's complaints were transmitted by the BBB and the DOT to Defendant for a response.  Defendant's responses indicate that Plaintiff disputed whether he was properly denied boarding in Mumbai, and that he requested compensation or a refund.  (*See* Am. Compl., Ex. 8 ("[O]ur staff in Mumbai were correct in advising you that you were unable to travel … taking into account [that information] I would be unable to meet your request for compensation."); Pl. Opp., Ex. G ("[W]e were correct in denying you boarding on our flight to London Heathrow[,] 25 January, 2015 … The ticket you had purchased is non-refundable."); Am. Compl., Ex. 9 ("The ticket you had purchased … is [ ] non-refundable.")).

Defendant's August 17, 2015 reply to Plaintiff's complaint to the DOT enumerates the reasons why he was denied boarding.  (Am. Compl., Ex. 8).  In Defendant's response to Plaintiff's BBB complaint, Defendant issued Plaintiff a $350 eVoucher "to offset the loss of your return [tickets]" and refunded the

"refundable taxes" paid on those tickets.  (Pl. Opp., Ex. G; Am. Compl., Ex. 9).

Defendant's further responses to Plaintiff's follow-up questions and complaints

simply restate Defendant's belief that its agents correctly denied Plaintiff

boarding and reiterated the reasoning behind the agents' actions.  (*Id.*).

## B.    Procedural Background

Plaintiff filed the initial complaint in this action on January 25, 2017.

(Dkt. #1).  On June 1, 2017, Defendant filed a letter requesting a pre-motion

conference and seeking leave to file a motion to dismiss the complaint.  (Dkt.

#7).  Plaintiff and Defendant both appeared for the initial conference on August

9, 2017.  (*See* Dkt. #22).  At that conference, Plaintiff was ordered to file either

his amended complaint or a letter advising the Court that he did not intend to

amend his complaint.  (*Id.*).  Plaintiff ultimately amended his pleadings on

October 16, 2017.  (Dkt. #27).  Defendant filed its motion to dismiss on

December 1, 2017.  (Dkt. #31-33).  Following an extension of his time to

respond (Dkt. #35), Plaintiff filed his opposition on February 9, 2018 (Dkt.

#37), and Defendant replied on March 2, 2018.  (Dkt. #42).

## DISCUSSION

## A.    Plaintiff's *Pro Se* Status

It is a credit to Plaintiff that his submissions to the Court have been

comprehensive and thoughtful.  "[A] pro se complaint, 'however inartfully

pleaded,' [is] held to 'less stringent standards than formal pleadings drafted by

lawyers.'"  *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines* v. *Kerner*,

404 U.S. 519, 520-21 (1972)).  In light of Plaintiff's *pro se* status, the Court

"afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe his pleadings and motion papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court is to read Plaintiff's "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

The Court applies this special solicitude by looking to Plaintiff's opposition to the motion and the documents attached thereto, in addition to the Amended Complaint and its well-pleaded allegations. Any concern over "harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered," and is negated when the plaintiff "relie[s] heavily upon these documents in framing the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). As Plaintiff had "actual notice of all the information" in these documents, the Court will consider them in assessing the sufficiency of Plaintiff's claims. *Id.*; *see also Washington* v. *James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (admonishing that the district court "should have given [the *pro se* plaintiff] the benefit of the doubt ... treating the complaint as if it had been amended.").

## B. Plaintiff's Claims

In his Amended Complaint, Plaintiff makes many factual allegations, not all of which are specifically linked to his legal claims. The Court considers

Plaintiffs' allegations with the liberality the law requires, and thus construes the Amended Complaint to raise the following claims:

i) *Breach of Contract*: Plaintiff brings a breach of contract claim, and the Court understands his allegation to be that Defendant was contractually obligated to allow him onto the flights for which he had tickets, and it breached that obligation when he was denied boarding in Mumbai. (*See* Am. Compl. 1, 10).

ii) *Negligence*: The Court reads Plaintiff's negligence claim (Am. Compl. 1) to stem from the night that Plaintiff spent outside the Mumbai airport after Defendant's employees forced him to exit because he did not have the correct documentation. (*Id.* at 16-18). Plaintiff alleges that his treatment has resulted in "undesirable physical changes," though he gives no further detail. (*Id.* at 30).

iii) *Gross Negligence*: Plaintiff next alleges gross negligence on the part of Defendant. (Am. Compl. 1). The Court understands this to be an extension of his negligence claim arising out of his night on the sidewalk outside the Mumbai airport. (*Id.* at 16-18).

iv) *Negligent Infliction of Emotional Distress*[3]: Plaintiff's negligent infliction of emotional distress claim also relates to his night outside the airport. Plaintiff details the experience as a harrowing one, and states that "[t]his trauma continues to subject [him] ... to significant suffering." (Am. Compl. 23). Plaintiff attributes this trauma to the actions of Defendant's representatives in Mumbai and the repercussions flowing therefrom, and states that the agents were "derogatory" toward him before forcing him "to exit the airport in the thick of the night." (*Id.* at 17-18).

---

[3] In addition to those claims detailed here, Plaintiff makes a tenth claim for "[p]utting me in [the] zone of danger." (Am. Compl. 1). As this is a theory of recovery for negligence claims rather than its own cause of action, the Court does not address it independently. *See Bovsun* v. *Sanperi*, 61 N.Y.2d 219, 228 (1984) ("[t]he zone-of-danger rule ... allows one who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family").

v) *Fraud*: The Court construes Plaintiff's claim for "[m]aking bogus statements" as an allegation of fraud relating to Defendant's customer service representatives' statements to Plaintiff after the events in Mumbai. (Am. Compl. 1, 25-26 ("[s]taff of British Airways has repeatedly provided false immigration information to me")). Plaintiff attaches to his papers three such communications, each of which addresses the sufficiency of his extended Green Card and I-797C letter with respect to U.K. transit visa requirements. (*Id.* at Ex. 8-9; Pl. Opp., Ex. G).

vi) *Federal Statutory Claims*: Finally, Plaintiff seeks to bring four claims under federal statutes and regulations. (Am. Compl. 1-2). Though Plaintiff sources these claims to the same facts as his contract and tort claims, there is no private right of action under any of these statutes or regulations, and these claims therefore fail as a matter of law.[4]

## C. Defendants Motion to Dismiss Under Rule 12(b)(2) Is Granted in Part and Denied in Part

Defendant moves to dismiss Plaintiff's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Def. Br. 11-13).[5] When evaluating a

---

[4] These include: (i) 49 U.S.C. § 40127, which bars discrimination by air carriers and in the use of private airports; (ii) 49 U.S.C. § 1374(b) (named in the Complaint as FAA § 404(b)), which similarly prohibits discrimination by air carriers; (iii) 14 C.F.R. § 250.9, which requires that an airline provide a written explanation to any ticketed passenger denied boarding; and (iv) 14 C.F.R. § 259.7, which requires that airlines provide passengers with contact information for the filing of complaints. (Am. Compl. 1-2). *See Shin* v. *Am. Airlines Grp., Inc.*, No. 17 Civ. 2234 (ARR) (JO), 2017 WL 3316129, at *2 (E.D.N.Y. Aug. 3, 2017) ("[D]istrict courts in this circuit have repeatedly held[ that] there is no private right of action under 49 U.S.C. § 40127(a).") (internal quotation marks omitted); *Dennis* v. *Delta Air Lines, Inc.*, No. 10 Civ. 973 (DLI) (LB), 2011 WL 4543487, at *5 (E.D.N.Y. Sept. 29, 2011) ("Congress repealed the relevant provision of Section 404(b) and enacted 49 U.S.C. § 40127(a) to replace it."); *Buck* v. *Am. Airlines, Inc.*, 476 F.3d 29, 34 (1st Cir. 2007) (collecting circuit decisions finding that the Airline Deregulation Act (of which 14 C.F.R. § 250.9 is one section) does not provide for a private right of action). Because the fourth claim (14 C.F.R. § 259.7) arguably arises from Defendant's conduct in New York, it is discussed further in the analysis of Defendant's Rule 12(b)(6) motion below.

[5] The Court considers first Defendant's motion to dismiss pursuant to Rule 12(b)(2), as the grant of such a motion would obviate the need for consideration of Defendant's motion pursuant to Rule 12(b)(6). *See Darden* v. *DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002).

motion to dismiss pursuant to Rule 12(b)(2), a district court may "consider[ ] materials outside the pleadings … without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." *Dorchester Fin. Secs., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013); *see also Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (discussing procedure for challenging personal jurisdiction).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Plaintiff must provide "legally sufficient allegations of jurisdiction." *Id.* These allegations are viewed in the "light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

To determine whether the exercise of personal jurisdiction is proper, the Court engages in a two-part inquiry. *First*, the Court looks "at whether there is a basis for personal jurisdiction under the laws of the forum state." *Clemmons* v. *Hodes*, No. 15 Civ. 8975 (KPF), 2017 WL 4326111, at *7 (S.D.N.Y. Sept. 26, 2017) (citing *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)). Plaintiff in this case argues that the Court can exert both general jurisdiction, due to Defendant's "systematic and continuous ties" with New York, and specific jurisdiction under New York's long-arm statute. (Pl. Opp. 5, 8-9). *See also* N.Y. C.P.L.R. §§ 301-02. *Second,* if personal jurisdiction

may be properly exercised under the first prong, the Court then evaluates

whether the assertion of jurisdiction is compatible with constitutional due

process requirements. *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 242 (2d

Cir. 2007); *see also Int'l Shoe Co.* v. *Washington*, 325 U.S. 310, 315 (1945).

These due process considerations require that the defendant have "certain

minimum contacts with the forum state such that the maintenance of the suit

does not offend traditional notions of fair play and substantial justice." *Licci*,

732 F.3d at 169 (internal brackets omitted) (quoting *Int'l Shoe*, 326 U.S. at

316).

### 1.    The Court Lacks General Jurisdiction over Defendant

A court's exercise of general jurisdiction under New York Civil Practice

Law and Rules § 301 requires that "a company has engaged in such a

continuous and systematic course of doing business in New York that a finding

of its presence in New York is warranted." *Sonera Holding B.V.* v. *Cukurova*

*Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks and

brackets omitted) (quoting *Landoil Res. Corp.* v. *Alexander & Alexander Servs.*,

77 N.Y.2d 28, 33 (1990)).  Defendant's "continuous activity of some sort[ ]

within a state … is not enough to support the demand that the corporation be

amendable to suits unrelated to that activity." *Goodyear Dunlop Tires Ops.* v.

*Brown*, 564 U.S. 915, 927 (2011) (internal quotation marks omitted) (quoting

*Int'l Shoe*, 326 U.S. at 318).  Rather, a corporation's "affiliations with the State"

must be "so 'continuous and systematic' as to render [it] essentially at home in

the forum State." *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

Defendant contends that general jurisdiction can be exercised over a party only "where it is incorporated or where it maintains its principal place of business[,]" and though Defendant's argument overstates the relevant case law, the Court nonetheless finds that it lacks general jurisdiction over Defendant. (Def. Br. 12). To be sure, Defendant is correct that, broadly speaking, general jurisdiction does not lie over a party in a forum where that entity is neither incorporated nor maintains its principal place of business. *Goodyear*, 564 U.S. at 924. Even still, "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." *Daimler AG* v. *Bauman*, 571 U.S. 117, 137-38 (2014) (alteration in original).

Plaintiff argues that due to the "very high numbers" of Defendant's "gross revenue from its New York and US business" the Court can exercise general jurisdiction over Defendant. (Pl. Opp. 5). While it appears that Defendant maintains at least one office in New York (*see* Am. Compl., Ex. 8, 19), and the airline operates flights in to and out of New York airports, these contacts do not rise to the level required to "render [Defendant] essentially at home in [New York]." *Goodyear*, 564 U.S. at 919. Such "high numbers" must be viewed relative to Defendant's overall activity "nationwide and worldwide," a view that minimizes their magnitude considerably. *Daimler*, 571 U.S. at 139 n.20.

Even accepting the figures that Plaintiff presents to the Court, it cannot be said with any certainty that these derive substantially from activities in New York, and if these activities "sufficed to allow adjudication of this [India]-rooted

13

case in [New York], the same global reach would presumably be available in every other State in which [Defendant's] sales are sizable." *Daimler*, 571 U.S. at 139; *see also Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016) ("In *Daimler*, the Court rejected the idea that a corporation was subject to general jurisdiction in every state in which it conducted substantial business."). It is only in the "exceptional case" that general jurisdiction lies over a corporation "in a forum other than its formal place of incorporation or principal place of business" and the corporation's contacts with that forum must "be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. Plaintiff does not, and cannot, support an argument that Defendant's relatively limited activities in New York amount to such an exceptional case, and the Court therefore cannot exercise general jurisdiction over Defendant. *See Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (holding that there was no "exceptional" general jurisdiction as "[t]he [defendants] have not transported their princip[al] 'home' to the United States, even temporarily"); *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 455, 457 (S.D.N.Y. 2014) (holding that defendant's use of New York office space and New York banks, among other factors, "is not one of those rare instances" in which a defendant "is subjected to a state's general jurisdiction irrespective of where they are domiciled").

### 2. The Court Lacks Specific Jurisdiction Under New York Law over Plaintiff's Claims Arising out of Events in Mumbai

"Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F.3d at 624.

14

New York's long-arm statute permits the exercise of personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). The inquiry under Section 302(a)(1) of the statute is twofold: "[i] [t]he defendant must have transacted business within the state; and [ii] the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V.* v. *Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The Court must have such specific jurisdiction over each of Plaintiff's individual claims. *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted.").

Thus, while jurisdiction may be "proper even though the defendant never enters New York," a defendant must have engaged in purposeful activities in the state and there must be a "substantial relationship between the transaction and the claim[s] asserted." *Al Rushaid* v. *Pictet & Cie*, 28 N.Y.3d 316, 323 (2016) (quoting *Fischbarg* v. *Doucet*, 9 N.Y.3d 375, 380 (2007)). Though Defendant inarguably engages in purposeful activities targeting airports and travelers located in New York, there exists no "substantial relationship" between that business activity and Plaintiff's claims in this lawsuit.

Even on a liberal reading of Plaintiff's pleadings, it is evident that his tort claims arise almost entirely out of Defendant's conduct in Mumbai. (Pl. Opp. 1 ("Denied boarding and the treatment I got from the Defendant over many

following months led to this lawsuit.")).[6]  As laid out above, Plaintiff brings

claims for negligence, gross negligence, negligent infliction of emotional

distress, and breach of contract.  (Am. Compl. 1).  While he correctly states

that "there is no bright-line test for determining whether the nexus between

[P]laintiff's claims and [D]efendant's transaction in New York is present,"

Plaintiff ascribes undue reliance on Defendant's bank transactions in New

York.  (*See* Pl. Opp. 9, 11).  The majority of his tort claims arise out of

Defendant's conduct in the Mumbai airport, and while his ticket purchase

transaction may have passed through or occurred in New York, such facts are

insufficient to warrant the exercise of specific jurisdiction over these claims.

(*See* Pl. Opp., Ex. B at 2).

> ### a.  The Court Lacks Specific Jurisdiction over Plaintiff's Breach of Contract Claim

Plaintiff's breach of contract claim arises out of his denied boarding and

Defendant's concomitant failure to transport him from Mumbai to Chicago.  A

plaintiff must allege four elements to state a claim for breach of contract under

New York law:  "[i] formation of a contract, [ii] performance by the plaintiff,

[iii] breach[,] and [iv] 'resulting damage.'"  *McCormick* v. *Favreau*, 929 N.Y.S.2d

572, 572 (3d Dep't 2011) (quoting *Clearmont Prop., LLC* v. *Eisner*, 872 N.Y.S.2d

725, 728 (3d Dep't 2009)).  The breach that Plaintiff alleges occurred in

Mumbai when he was not allowed to board the plane to London.  (Am.

Compl. 16-18).  There is thus no "substantial relationship" between

---

[6]     This is true with the exception of Plaintiff's fraud claim, which the Court addresses separately below.

Defendant's business transactions in New York and the conduct that gives rise to Plaintiff's breach of contract claim. The Court does not have personal jurisdiction over Defendant with respect to the breach of contract claim.

> **b.** **The Court Lacks Specific Jurisdiction over Plaintiff's Negligence Claim**

Plaintiff next brings a claim for negligence stemming from his treatment by Defendant's employees in Mumbai insofar as they forced him to remain outside the airport until he was able to purchase another ticket. (Am. Compl. 16-18). "Under New York law, a plaintiff must establish the following elements for a negligence claim: [i] defendant owed plaintiff a duty of care; [ii] defendant breached that duty; and [iii] the breach proximately caused plaintiff's injury." *Labajo* v. *Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007). Moreover, in general, a plaintiff, cannot recover purely economic losses on a claim of negligence. *See Am. Tel. & Tel. Co.* v. *N.Y.C. Human Res. Admin.*, 833 F. Supp. 962, 982-83 (S.D.N.Y. 1993) (upholding dismissal of negligence claim because there was "no contention [that the] alleged negligence resulted in personal injury or property damage.").

As with Plaintiff's claim for breach of contract, the events giving rise to this claim occurred in Mumbai. (Am. Compl. 16-18). There is no "substantial relationship" between Defendant's activities in New York and Plaintiff's negligence claim, and this Court does not have specific jurisdiction over Defendant with respect to this claim.

### c. The Court Lacks Specific Jurisdiction over Plaintiff's Gross Negligence Claim

Plaintiff's gross negligence claim also flows from the lack of care shown to him by Defendant's employees in Mumbai. Gross negligence "differs in kind as well as degree from ordinary negligence." *Kinsey* v. *Cendant Corp.*, No. 04 Civ. 582 (RWS), 2005 WL 1907678, at *7 (S.D.N.Y. Aug. 10, 2005) (quoting *Sutton Park Dev. Corp. Trading Co. Inc.* v. *Guerin & Guerin Agency, Inc.*, 745 N.Y.S.2d 622, 624 (3d Dep't 2002)). To state a claim for gross negligence, Plaintiff must allege conduct by Defendant that "'smacks of intentional wrongdoing'" or "evinces a reckless disregard for the rights of others." *Purchase Partners, LLC* v. *Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (quoting *Farash* v. *Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367-68 (S.D.N.Y. 2008)). As such, "a party is grossly negligent when it fails to exercise even slight care or slight diligence." *Goldstein* v. *Carnell Assocs., Inc.*, 906 N.Y.S.2d 905, 905-06 (2d Dep't 2010) (internal quotations omitted). Once again, even assuming that Plaintiff has alleged facts sufficient to satisfy the stringent requirements of a gross negligence claim, the offending conduct occurred in Mumbai. As with Plaintiff's negligence claim, this Court does not have specific jurisdiction over Defendant.

### d. The Court Lacks Specific Jurisdiction over Plaintiff's Negligent Infliction of Emotional Distress Claim

Plaintiff's next claim, for negligent infliction of emotional distress, stems as well from the time that he was forced to spend outside the Mumbai airport until he could secure a new ticket. A successful claim for negligent infliction of

emotional distress in New York may be made "by showing 'a breach of a duty of care resulting directly in emotional harm … even though no physical injury occurred,' as long as 'the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim … possess[es] some guarantee of genuineness." *Mortimer* v. *City of New York*, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018) (alterations in original) (quoting *Taggart* v. *Costabile*, 14 N.Y.S.3d 388, 397 (2d Dep't 2015)). Nonetheless, "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury.'" *Colo. Capital Invs., Inc.* v. *Owens*, 304 F. App'x 906, 908 (2d Cir. 2008) (summary order) (quoting *Broadnax* v. *Gonzalez*, 2 N.Y.3d 148, 153 (2004)).

While Plaintiff alleges that he "continues to [be] subject … to significant suffering" as a consequence of his distress at being forced to wait outside the airport overnight, such impact stems from his treatment in Mumbai. (Am. Compl. 20-21, 23). Those activities that tie Defendant to New York are unrelated to the actions that give rise to Plaintiff's claim for negligent infliction of emotional distress; the Court therefore does not have specific jurisdiction over claims, like this one, that arise from such conduct. *See Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 58 (2d Cir. 2012) ("[n]o articulable nexus or substantial relationship exists between [Defendant's] general use of

its … account for wire transfers through New York and the specific …

activities … underlying [Plaintiff's] claims." (alterations in original)).

### 3. The Court Has Specific Jurisdiction Under New York Law as to Plaintiff's Claims Arising out of Events in New York

Unlike Plaintiff's other claims, his allegations of fraud have a substantial

relationship with Defendant's purposeful activities in New York. This claim

stems from the conduct of Defendant's customer service employees based in

New York, and thus "the cause of action sued upon arises out of the

defendant's activities in [the] state." *Brown*, 814 F.3d at 624; (*see also* Am.

Compl., Ex. 8 (response to Plaintiff's DOT complaint from a customer relations

manager based in Manhattan); Pl. Opp., Ex. G at 2-3 (response to Plaintiff's

BBB complaint from a customer relations employee based in the New York City

area); Am. Compl., Ex. 9 (response to Plaintiff's BBB complaint from the same

customer relations employee at issue in the first BBB communication)). Thus,

as Defendant has "transacted business within the state" and Plaintiff's fraud

claim "arises[s] from that business activity," the Court may properly exert

personal jurisdiction over that claim pursuant to New York's long-arm statute.

*Sole Resort*, 450 F.3d at 103.

As Plaintiff has made the requisite statutory showing with respect to this

claim, the Court turns to the second prong of the personal jurisdiction

inquiry — whether it is compatible with due process. *See Best Van*, 490 F.3d

at 242. The due process requirement of jurisdiction requires "[i] that a

defendant has certain minimum contacts with the relevant forum, and [ii] that

the exercise of jurisdiction is reasonable [under] the circumstances." *In re*

*Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Int'l Shoe*, 326 U.S. at 316); *see also Ehrenfeld* v. *Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007) ("[E]ven if … personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process."). The reasonableness analysis looks at "[i] the burden that the exercise of jurisdiction will impose on the defendant; [ii] the interests of the forum state in adjudicating the case; [iii] the plaintiff's interest in obtaining convenient and effective relief; [iv] the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and [v] the shared interest of the states in furthering substantive social policies." *Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

As the Second Circuit has noted, "[i]t would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business," "the assertion of specific jurisdiction would somehow otherwise 'offend traditional notions of fair play and substantial justice.'" *Licci*, 732 F.3d at 170 (quoting *Int'l Shoe*, 326 U.S. at 316). This case does not present such a "rare" exception, and this Court's exercise of jurisdiction comports with due process. *Id.*

### a. The Burden on Defendant

Defendant, which regularly transacts business in and appears to maintain several offices in New York, is not likely to be unduly burdened by

this Court's exercise of jurisdiction. Indeed, Defendant makes no such argument in its motion to dismiss briefing. (*See* Def. Br. 12 (addressing due process only with respect to the exercise of general jurisdiction)). In addition, the Court is inclined to give this factor less weight than it might give others, as it can work to lessen any such burden. *See Ahmed* v. *Purcell*, No. 14 Civ. 7491 (KPF), 2016 WL 1064610, at *11 (S.D.N.Y. Mar. 14, 2016); *see also Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129-30 (2d Cir. 2002). On balance, this factor favors the exercise of specific jurisdiction.

### b.    The Forum State's Interest

As neither party is a citizen of New York, the state has a presumptively minimal interest in adjudicating this claim. *See Metro. Life Ins. Co.*, 84 F.3d at 574. However, the acts that serve as the basis for Plaintiff's fraud claim occurred in New York, and the Second Circuit has found that this weighs in favor of a state's interest in asserting specific jurisdiction. *See Bank Brussels*, 305 F.3d at 130 (finding that, "as the center" of several actions giving rise to the dispute, New York had an interest in adjudicating the plaintiff's claim). Plaintiff alleges that "[t]he activities of denying and delaying refund and offering negligible refund ... occurred in New York." (Pl. Opp. 8). These actions, which establish the "nexus" with New York, weigh in favor of the Court's exercise of jurisdiction.

### c.    Plaintiff's Interest

Plaintiff makes no clear argument with respect to his interest in adjudicating his claims before this Court specifically. However, he does

suggest that "[d]ismissing my FAC and not giving me a chance to amend it and not transferring this lawsuit to another district in [the] USA will eliminate all of my options to sue the Defendant because of the two-year statute of limitations." (Pl. Opp. 2). Though Plaintiff is addressing his fear that his claims may be time-barred, it is perhaps more compelling as a jurisdictional argument. It is not clear that there is another forum in which Plaintiff could bring his claims against Defendant. Defendant is based in the U.K. (O'Rourke Decl. ¶ 4); Plaintiff resides in Wisconsin (Am. Compl., Ex. 16); and the events underlying the majority of Plaintiff's claims occurred in India. However, the theory of "jurisdiction by necessity" is not a recognized theory of jurisdiction, and the Court will not adopt it here. *See Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 419 n.13 (1984) ("We decline to consider adoption of jurisdiction by necessity — a potentially far-reaching modification of existing law — in the absence of a more complete record."). As such, this factor is neutral in the Court's due process analysis.

### d. The Interstate Judicial System's Interest

This factor weighs little in the Court's due process analysis. Courts generally look at simultaneous litigation in other forums between the parties and the location of witnesses and documents. *Ahmed*, 2016 WL 1064610, at *11; *Metro. Life Ins. Co.*, 84 F.3d at 574. Relevant documents and witnesses are likely to be found in various locations outside New York, and Plaintiff has not made a showing that any critical mass of evidence is located here. This factor favors Defendant.

### e.    The Interest in Substantive Social Policies

The parties have not identified any social policies that will be affected by litigating this action in a New York forum, nor is the Court aware of any such considerations.  Plaintiff suggests that Defendant is "known for denying and delaying compensation and offering [ ] unfair compensation that people will not want to accept," but such a conclusory allegation does not relate to his claim for fraud, and the Court does not consider it persuasive or relevant to this factor.  (Am. Compl. 27).

Because the Court concludes that it lacks personal jurisdiction over Defendant with respect to all but one of Plaintiff's claims, it will not engage in consideration of Defendant's motion pursuant to Rule 12(b)(6) except as to the Plaintiff's fraud claim.

## D.    Defendant's Motion to Dismiss Plaintiff's Fraud Claim Under Rule 12(b)(6) Is Granted

Defendant moves to dismiss the complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted.  In order for Plaintiff's remaining fraud claim "[t]o survive a motion to dismiss, [the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Though "all reasonable inferences" should be drawn in Plaintiff's favor, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court may consider "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" when deciding a motion to dismiss pursuant to Rule 12(b)(6). *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). As noted earlier, the Court review's the sufficiency of Plaintiff's claims with the deference given to a *pro se* litigant.

Plaintiff's sole claim over which this Court can exercise jurisdiction is his claim for fraud arising out of his communications with Defendant's customer relations employees based in New York.[7] A prima facie case for fraud requires allegations of "[i] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [ii] made for the purpose of inducing the other party to rely upon it, [iii] justifiable reliance of the other party on the misrepresentation or material omission, and [iv] injury." *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co.* v. *Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

Additionally, in this federal diversity action, Plaintiff must plead his fraud claim with the particularity required by Rule 9(b). *Premium Mortg. Corp.*, 583

---

[7]    One of Plaintiff's statutory claims alleges that Defendant failed to provide required contact information for the filing of complaints, in violation of 14 C.F.R. § 259.7(b). (Am. Compl. 2, 33-34). *See* 14 C.F.R. § 259.7(b) (2011) (requiring that air carriers provide contact information "on the … foreign carrier's website (if marketed to U.S. consumers), on all e-ticket confirmations and, upon request, at each ticket counter and boarding gate staffed by the carrier."). This regulation offers no enforcement mechanism for individual passengers. *See* 14 C.F.R. § 259.4(f); Timothy M. Ravich, *National Airline Policy*, 23 U. MIAMI BUS. L. REV. 1, 16-17 (2014) ("despite its creation of rights for passengers … the rule made clear that no enforcement mechanism by passengers themselves existed."). Plaintiff's claim of violation of this provision — which the Court understands to be connected to his fraud claim — is therefore dismissed.

F.3d at 108. Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keenan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (internal quotation marks omitted) (quoting *Acito* v. *IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)). "The requisite 'strong inference' of fraud may be established either [i] by alleging facts to show that defendants had both motive and opportunity to commit fraud, or [ii] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91 (internal quotation marks and citations omitted). The pleading standard under Rule 9(b) "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Plaintiff's belief that Defendant's statements were "bogus," however sincerely held, does not a fraud claim make, insofar as the Amended Complaint does not identify a misrepresentation or a material omission of fact that was known to be false by Defendant. Rather, Plaintiff states that "[s]taff of British

26

Airways ha[ve] repeatedly provided false immigration information to me." (Am. Compl. 25-26). While he may understand the exemptions to the U.K. transit visa requirement differently than Defendant's representatives, such a difference of opinion or interpretation is insufficient to satisfy this requirement. (*See* Am. Compl., Ex. 12 (reflecting Plaintiff's own annotations)). The Court is not bound to accept Plaintiff's "conclusory allegations" that Defendant knowingly made false representations to him. More importantly, Plaintiff has alleged neither his justifiable reliance on any of these putative misstatements, nor injury resulting from such reliance. And Plaintiff has fallen short of satisfying the rigorous pleading standard of Rule 9(b). For all of these reasons, Plaintiff has failed to state a claim against Defendant for fraud.

## CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(2) is GRANTED as to Plaintiff's claims for breach of contract, negligent infliction of emotional distress, negligence, and gross negligence. Defendant's motion to dismiss pursuant to Rule 12(b)(6) is GRANTED as to Plaintiff's claim of fraud. Though Plaintiff has asked for leave to amend his pleadings, the Court believes, given the analysis outlined above, that any amendment would be futile. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of motion to amend pro se complaint where complaint's deficiencies were "substantive" and thus repleading was futile).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      July 6, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Amol D. Mali
4236 N. Ardmore Ave.
Shorewood, WI 53211